IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KURT KINGSLEY,

    **Plaintiff,**

    v.                                CASE NO. 24-3193-JWL

UNITED STATES OF AMERICA,
et al.,

    **Defendants.**

## MEMORANDUM AND ORDER TO SHOW CAUSE

Plaintiff Kurt Kingsley is hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein.

**I. Nature of the Matter before the Court**

Plaintiff, a federal prisoner, brings this pro se civil rights action under 28 U.S.C. § 1331. Plaintiff is incarcerated at USP Marion in Marion, Illinois. The Court granted Plaintiff leave to proceed in forma pauperis.

Plaintiff alleges that on April 10, 2023, while in the custody of the U.S. Marshals, he was transported by Geo Transport, Inc., to the United States Courthouse in Kansas City, Kansas. (Doc. 1, at 2.) Plaintiff states that during transport, all detainees must wear leg shackles and cuffs strapped to a chain around their waist for security purposes. *Id*. As Plaintiff was led out of the van, he stepped onto the metal grated platform of the van and his chain on his legs lodged in between the cracks of the grated platform. *Id*. Plaintiff claims that as he pitched forward the transport officer did not hold onto Plaintiff and he "fell from over a foot off the ground and was not able to even try to break [his] fall due to [his] arm restraints." *Id*. at 3.

1

Plaintiff alleges that he suffered "significant physical bodily injury mainly [to his] right ribcage and neck and shoulder area," but he declined the offer to go to the hospital because he was there for his long-awaited sentencing date. *Id*. Plaintiff alleges that he heard one of the transport officers say to the other "I told them they need to replace those runners." *Id*.

Plaintiff alleges that after he was transported back to USP-Leavenworth, he sought help from staff. He was told by staff that he would receive x-rays and they recommended that he take ibuprofen and aspirin for the pain. *Id*. Plaintiff alleges that he was transferred within a few weeks and never received the x-rays. *Id*.

Plaintiff alleges that the U.S. Marshals had custody of him and used a private corporation to transport him. *Id*. at 4. Plaintiff alleges that he filed a tort claim with the U.S. Marshals on April 27, 2023. *Id*. at 6.

Plaintiff names as defendants: United States of America; Geo Transport, Inc.; and (fnu) (lnu) Transport Officers with Geo Transport. Plaintiff seeks compensatory damages in the amount of $32,000. *Id*.

**II. Statutory Screening**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition,

the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at

3

1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

**III. DISCUSSION**

    1. **FTCA**

Plaintiff appears to assert a claim under the Federal Torts Claim Act ("FTCA"). The FTCA, 28 U.S.C. §§ 1346(b)(1), 2671–2680, "allows the United States to be sued for claims arising out of negligent or wrongful acts or omissions of its employees, when such employees are acting within the scope of their duties." *Ingram v. Faruque*, 728 F.3d 1239, 1245 (10th Cir. 2013) (citing § 1346(b)(1)). "The United States is the only proper defendant in an FTCA action." *Smith v. U.S.*, 561 F.3d 1090, 1099 (10th Cir. 2009) (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 n.4 (10th Cir. 2001)). The FTCA "provides the exclusive avenue to assert a claim sounding in tort against the United States." *Franklin Sav. Corp., In re*, 385 F.3d 1279, 1286 (10th Cir. 2004), *cert. denied*, 546 U.S. 814 (2005) (citing 28 U.S.C. § 2679(a), which provides that "the FTCA remedy is 'exclusive' for all 'claims which are cognizable under section 1346(b)'").

An actionable FTCA claim must be:

> " '[1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or

4

employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.' "

*Srader v. United States*, 2023 WL 5835029, at *5–6 (D. Kan. Sept. 8, 2023) (quoting *Brownback v. King*, 141 S. Ct. 740, 746 (2021) (citations omitted)).

Under the FTCA, government employees are defined as including officers and employees of any federal agency but excludes "any contractor with the United States." 28 U.S.C. § 2671. Thus, "[w]hile the FTCA allows the United States to be sued for damages arising from torts committed by government employees acting within the scope of their employment, it 'does not authorize suits based on the acts of independent contractors or their employees.'" *Mack v. United States*, 2012 WL 2045720, at n.5 (D. Kan. 2012) (citing *Curry v. United States*, 97 F.3d 412, 414 (10th Cir. 1996); *Jones v. United States*, 305 F. Supp. 2d 1200, 1207 (D. Kan. 2004) (Physicians in private practice that "provide medical services to facilities operated by the federal government are independent contractors, and not employees of the government for FTCA purposes.") (citing *Robb v. United States*, 80 F.3d 884, 890 (4th Cir. 1996) (citing e.g., *Carrillo v. United States*, 5 F.3d 1302 (9th Cir. 1993); *Broussard v. United States*, 989 F.2d 171 (5th Cir. 1993); *Leone v. United States*, 910 F.2d 46 (2d Cir. 1990); *Bernie v. United States*, 712 F.2d 1271 (8th Cir. 1983))).

Plaintiff attaches to his Complaint the response he received to his Administrative Tort Claim. (Doc. 1–1, at 5.) The response from General Counsel provides that:

> This responds to the above-referenced administrative tort claim received by the United States Marshals Service (USMS), District of Kansas on April 27, 2023 and forwarded to this office and received May 3, 2023, in the amount of $32,000.00[.] You claim that on April 10, 2023, while being transported by the GEO Group to the Robert J. Dole Courthouse in Kansas City, Kansas, you fell out of the transport van.

5

> The applicable provisions of the Federal Tort Claims Act [28 U.S.C. §§ 1346(b), 2401(b), 2671, et seq.] provide for the payment of claims which arise from the negligent or wrongful act or omission of an employee of the Federal Government while acting within the scope of his or her employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.
> 
> Our view of the circumstances and the applicable law revealed no negligence on behalf of any USMS employee. Your allegations arise from a transport by the GEO Group. The independent contractor is the appropriate party to whom you should address your claim for damage allegedly caused by its employee. The United States is not liable under the Federal Tort Claims Act for acts or omissions of independent contractors. See 28 U.S.C. § 2671 and Logue v. United States, 412 U.S. 521 (1973). You should file your claim with the GEO Group.
> 
> Accordingly, your administrative tort claim against the United States in the amount of $32,000.00 is denied. If you are dissatisfied with our determination, suit may be filed in the appropriate U.S. District Court no later than six months after the date of the mailing of this denial. See 28 U.S.C. § 2401(b).

*Id*.

Courts have held that the duty of the Marshals Service to transport federal prisoners is delegable. *See Bermudez v. United States*, 2009 WL 10718120, at *3 (S.D. Tex. 2009) (finding that 18 U.S.C. §§ 4002 and 4013 permit the Marshals Service to delegate the transportation of federal prisoners) (citations omitted). Plaintiff has not shown that the transport officers were federal employees for purposes of a claim under the FTCA.

**2.** ***Bivens***

A *Bivens*[1] remedy would also be unavailable against the company and its employees. *See Vallasenor v. GEO Group, Inc.*, 2014 WL 5293444, at *2 (D. Colo. 2014) ("Mr. Villasenor does not have a *Bivens* remedy against the GEO Group, Inc.") (citing *Correctional Serv. Corp. v.*

---

[1] *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

*Malesko*, 534 U.S. 61 (2001) (holding that a *Bivens* claim is not available against a private corporation operating under a contract with the federal government)).

Furthermore, Plaintiff would not have a *Bivens* claim even if federal employees were involved. The Tenth Circuit recently noted that the Supreme Court "is on course to treating *Bivens* as a relic of the 20th century" and that "[t]his development has been gradual, but relentless." *Logsdon v. U.S. Marshal Serv.*, 91 F.4th 1352, 1355 (10th Cir. 2024), *rehr'g denied* (Apr. 5, 2024). The Tenth Circuit in *Logsdon* found that:

> Without explicitly overruling its three acknowledged precedents, the [Supreme] Court has shown an increasing willingness to distinguish them, now stating that the ultimate question to ask when determining whether the courts should recognize a *Bivens* cause of action not created by Congress is ordinarily only "whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert v. Boule*, 596 U.S. 482, 492, 142 S. Ct. 1793, 213 L.Ed.2d 54 (2022). And the circumstances in which the answer to the question is "no" appears to comprise a null set. *See id.* at 503, 142 S. Ct. 1793. (Gorsuch, J., concurring) ("When might a court *ever* be 'better equipped' than the people's elected representatives to weigh the 'costs and benefits' of creating a cause of action? It seems to me that to ask the question is to answer it. To create a new cause of action is to assign new private rights and liabilities—a power that is in every meaningful sense an act of legislation."); *see also Silva v. United States*, 45 F.4th 1134, 1140 (10th Cir. 2022) ("[W]e are left in no doubt that expanding *Bivens* is not just 'a disfavored judicial activity,' it is an action that is impermissible in virtually all circumstances." (quoting *Egbert*, 596 U.S. at 491, 142 S. Ct. 1793) (citation omitted)). The Court has said in effect that almost any difference between the case at hand and the three Court precedents can justify rejecting a cause of action. *See Egbert,* 596 U.S. at 503, 142 S. Ct. 1793 (Gorsuch, J., concurring) ("Candidly, I struggle to see how this set of facts differs meaningfully from those in *Bivens* itself.").
>
> And, perhaps even more striking, the Court has justified a departure from those precedents even when the facts are virtually the same if the government can provide a reason for not recognizing a cause of action that was not considered in the applicable precedent. Thus, in *Egbert* itself the Court considered an excessive-force claim, similar to the one in *Bivens*, against a

> federal officer. *See Egbert*, 596 U.S. at 495, 142 S. Ct. 1793 ("*Bivens* and this case do involve similar allegations of excessive force and thus arguably present almost parallel circumstances or a similar mechanism of injury." (internal quotation marks omitted)). But it held that the court of appeals erred by recognizing a cause of action under *Bivens*, distinguishing *Bivens* based on facts that have no bearing on the elements of an excessive-force claim: the incident arose in the "border-security context," and Congress had created remedies for misconduct by government agents. *See id.* at 494, 142 S. Ct. 1793. Given such hurdles placed in the way of a *Bivens* cause of action, Mr. Logsdon has no claim.

*Id*. at 1355–56.

The Tenth Circuit in *Logsdon* found that "[a] second independent ground for not recognizing a *Bivens* action . . . is that the availability of alternative remedies for misconduct . . . suggests that this court should not be the institution to create a remedy." *Id*. at 1359. "If there are alternative remedial structures in place, that alone, like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id*. (quoting *Egbert*, 596 U.S. at 493). The Tenth Circuit quoted *Egbert* as follows:

> "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy. That is true even if a court independently concludes that the Government's procedures are not as effective as an individual damages remedy." *Id.* at 498, 142 S. Ct. 1793 (internal quotation marks omitted).

*Id*.

In *Silva*, the Tenth Circuit held that the Bureau of Prison's Administrative Remedy Program "ARP" was adequate. *Silva v. United States*, 45 F.4th 1134, 1141 (10th Cir. 2022) (finding that the key takeaway from *Egbert* is "that courts may dispose of *Bivens* claims for 'two *independent* reasons: Congress is better positioned to create remedies in the [context considered by the court], and the Government already has provided alternative remedies that protect

8

plaintiffs' ") (citation omitted); *see also Noe v. United States Gov't*, 2023 WL 8868491, at *3 (10th Cir. Dec. 22, 2023) ("We need not decide whether Noe's case is meaningfully different from *Carlson*, because in the wake of *Egbert* and *Silva* . . . the availability of the ARP is sufficient to foreclose a *Bivens* claim despite any factual similarity between the two.").

In *Silva*, the Tenth Circuit had little difficulty in concluding "that the BOP Administrative Remedy Program is an adequate 'means through which allegedly unconstitutional actions . . . can be brought to the attention of the BOP and prevented from recurring.' " *Silva*, 45 F.4th at 1141 (citation omitted). The *Silva* court found that "because *Bivens* 'is concerned solely with deterring the unconstitutional acts of individual officers,' . . . the availability of the BOP's Administrative Remedy Program offers an independently sufficient ground to foreclose Plaintiff's *Bivens* claim." *Id*. (citing *Egbert*, 142 S. Ct. at 1806 (quoting *Malesko*, 534 U.S. at 71, 122 S. Ct. 515)).

**IV.  Response Required**

Plaintiff is required to show good cause why his Complaint should not be dismissed for the reasons stated herein. Failure to respond by the deadline may result in dismissal of this matter without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **January 21, 2025,** in which to show good cause, in writing to the undersigned, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS SO ORDERED**.

**Dated December 19, 2024, in Kansas City, Kansas.**

**S/ John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**